USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/18/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
                                                                          :
CATARIA INTERNATIONAL, INC.,                                              :
                                                                          :
                     Plaintiff,                                   :    12 Civ. 4781 (JMF)
                                                                          :
    -v-                                                                 :    MEMORANDUM OPINION
                                                                          :    AND ORDER
ORIENT EXPRESS CONTAINER CO., INC.,                                       :
                                                                          :
                     Defendant.                                   :
                                                                          :
------------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Cataria International Inc. ("Cataria"), a California corporation in the business of buying and selling clothing, brings this admiralty action against Defendant Orient Express Container Co., Inc. ("OEC") alleging that, during a shipment of its goods from Cambodia to Los Angeles, some goods were stolen or lost. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendant moves for summary judgment. (OEC's Mot. Summ. J. (Docket No. 20)). For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

        In July 2011, Cataria arranged for OEC — a non-vessel operating common carrier that coordinates international shipments (Wang Decl. (Docket No. 23) ¶ 7) — to transport twenty-five containers of clothing from a supplier in Cambodia, Diamond Tower, to Cataria's warehouse in Los Angeles (*id.* ¶¶ 4-5, 9-10). Diamond Tower was responsible for manufacturing and packaging the clothing, as well as stuffing, closing, and sealing all of the containers in its warehouse. (Campanale-Orozco Decl. ("Orozco Decl.") (Docket No. 22), Ex. 8, at 22; *id.*, Ex. 9 ("Chen Depo."), at 16-17). Cambodian customs officials supervised the process;

when the twenty-five containers left the Diamond warehouse, each bore three seals: a yellow Government Control "CCD" seal, a white broker seal, and an orange Economy Department seal. (Decl. Chhun Chhay Supp. Pls.'s Opp'n Def.'s Mot. Summ J. (Docket No. 29) ¶ 8).

All twenty-five containers were transported to the Port of Phnom Penh where they were turned over to OEC for shipment to Cataria in Los Angeles. (Wang Decl. ¶ 9). OEC issued three bills of lading for the goods. The first bill of lading was for ten containers "said to" contain 3350 cartons of "garments wearing apparel" with a gross weight of 90,450 kilograms. (*Id.* ¶ 16; *id.* Ex. 2). The second bill of lading was for eight containers "said to" contain 2680 cartons of "garments wearing apparel" with a gross weight of 72,360 kilograms. (*Id.* ¶ 16; *id.* Ex. 3). The final bill of lading was for five containers "said to" contain 1675 cartons of "garments wearing apparel" with a gross weight of 45,225 kilograms. (*Id.* ¶ 16; *id.* Ex. 4).[1] All three indicated that they were "CY/CY," (*id.* ¶ 16) or "'container yard to container yard,' meaning [the shipper's] custody and control begins at the port of loading and ends at the port of discharge" *Alpine Fresh, Inc. v. M/V CAP ITAIM*, No. 10 Civ. 8279 (HB), 2011 WL 4831195, at *2 (S.D.N.Y. Oct. 12, 2011).

OEC shipped the containers to Los Angeles on three different voyages during July and August of 2011. (Wang Decl. ¶¶ 10, 13-15; *id.* Exs. 2-4). Upon the arrival of each shipment, OEC issued an "Arrival Notice / Freight Invoice" to Cataria advising it that the containers had been discharged from the ship and were available to be picked up. (*Id.* ¶¶ 24, 33, 41; *id.* Exs. 5, 7, 9; Chen Depo. at 26-27, 69-70, 110-11). Each "Arrival Notice / Freight Invoice" listed the

---

[1] Although the parties agree that the shipment involved a total of twenty five containers, the three bills of lading in the record cover only twenty three containers — suggesting that there may have been a fourth bill of lading. As the three bills of lading in the record pertain to the goods at issue in this case, the discrepancy is irrelevant for present purposes.

gross weight of the relevant shipment; in each case, the gross weight matched the gross weight listed on the corresponding bill of lading. (*Compare id.* Exs. 2-4, *with id.* Exs. 5, 7, 9). One of the containers at issue in this case was subject to a random inspection by the Department of Homeland Security at the Port of Los Angeles, in the course of which its seal was broken and the container was opened. (Wang Decl. ¶ 42; Chen Depo. at 136-37). United States customs officials did not inform OEC that there were any problems with the seal upon inspection. (Wang Decl. ¶ 43). There is no evidence that the officials notified Cataria of anything untoward either.

The containers remained at the discharge port for four to five days until third-party trucking companies picked them up and transported them to Cataria's warehouse on four separate dates in August 2011. (*Id.* ¶¶ 26-27, 35-36; *id.* Exs. 5, 7, 9; Chen Depo. at 38, 78-79, 116-17, 119, 134-35). The delivery receipts did not report any problems with the containers or their respective seals. (Wang Decl. ¶¶ 29, 36; *id.* Ex. 6; Chen Depo. at 61, 78-79, 112, 119, 154; Orozco Decl. ¶ 21; *id.* Ex. 3). But when Cataria cut the seals to four containers — including the one container searched by customs officials — it allegedly found that cartons of garments were missing. (Compl. (Docket No. 1) ¶¶ 7, 12, 16, 20-21). According to the Complaint, the missing cargo amounted to 719 cartons of garments containing a total of 17,975 items. (*Id.*). Upon discovering the loss, Cataria filed police reports. (Orozco Decl. ¶¶ 22-25; *id.* Exs. 4-7). On December 20, 2011, Cataria issued a formal claim notice to OEC (Wang Decl. ¶ 11; *id.* Ex. 1), and on June 19, 2012, it commenced this lawsuit. Defendant now moves for summary judgment.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir.

3

2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, however, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To that end, the non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see also Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("[The non-moving party] cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.").

**DISCUSSION**

OEC moves for summary judgment on the ground that Cataria cannot make out a prima facie case for liability under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, *et seq.* ("COGSA").  (OEC's Mem. Law Supp. Mot. Summ. J. ("Def.'s Mem. Law") (Docket No. 21) 4).  To establish a prima facie case for damages under COGSA, Cataria must demonstrate that the goods were lost or stolen while in the custody of OEC.  *See, e.g.*, *Thyssen, Inc. v. S/S Eurounity*, 21 F.3d 533, 538 (2d Cir. 1994).  Specifically, Cataria must prove "(1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged condition." *Westway Coffee Corp. v. M.V. Netuno*, 675 F.2d 30, 32 (2d Cir. 1982) (collecting cases). "Outturn" is "variously defined as at the time of delivery to the port of destination, the time of discharge, or the time goods delivered to the consignee's agent."  *Res. Recovery, Inc. v. China Ocean Shipping (Grp.) Co.*, No. 96 Civ. 4409 (JSM), 1998 WL 474134, at *2 (S.D.N.Y. July 11, 1998) (citing *Bally, Inc. v. M/V Zim Am.*, 22 F.3d 65, 69 (2d Cir. 1994)); *see also, e.g.*, *Nissho-Iwai Co. v. M/T Stolt Lion*, 719 F.2d 34, 38 (2d Cir. 1983) (stating that outturn occurs "at the time of discharge").  If the plaintiff establishes its prima facie case, the burden then shifts to the carrier, who must "show that the loss or damage falls within one of the COGSA exceptions." *Westway Coffee*, 675 F.2d at 32.

Here, Cataria has satisfied the first prong of its prima facie case based on the weight and description of the cargo in the bills of lading issued by OEC.  *See id.* ("[T]he weight listed on a bill of lading is prima facie proof of receipt by the carrier of that weight regardless of attempted reservations like 'said to weigh[]' . . . .").  But "[t]he second prong of the prima facie case — damage at outturn — is more problematic."  *Bally*, 22 F.3d at 69.  Cataria's sole evidence of a shortage at that time (which Cataria concedes was no later than when "the truckers picked up the

cargo") is (1) the fact that cartons were missing when the containers were opened at its warehouse; (2) the fact that "none of the truckers noted any exceptions on their delivery orders or called Cataria's attention to problems with the seals or containers"; and (3) the claim by one of its employees that "he personally examined the seals after the containers were opened and observed what he thought was evidence of tampering, either noticeable marks and/or possible re-gluing." (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. (Docket No. 28) 6 (referring to Decl. Jason Chen. Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. (Docket No. 30) ¶¶ 9, 14, 18)). But this evidence, even if admissible (which OEC disputes at least in part (OEC's Reply Cataria Int'l, Inc.'s Opp'n OEC's Mot. Summ. J. (Docket No. 34) 5-7, 9), establishes only that there was a shortfall when the containers were ultimately opened at Cataria's warehouse. It does nothing to "rule out the possibility that the goods were pilfered while in [the truckers'] custody, while stored at Port Security, or during or after unloading of the container at the [Cataria] warehouse." *Bally*, 22 F.3d at 69.

Indeed, if anything, the evidence in the record suggests that the loss or theft did *not* occur during OEC's shipment of the goods. First, far from supporting Cataria, the fact that the truckers (not to mention, the customs officials who inspected of one of the containers at issue) did not note any problems with the containers or their seals at the time of discharge supports a conclusion that the shortage occurred after the containers left OEC's custody. Second, as noted, OEC issued an "Arrival Notice / Freight Invoice" upon arrival of each shipment and, in each case, the weight listed matched the weight listed on the corresponding bill of lading. Admittedly, there appears to be no evidence in the record that OEC actually weighed the containers upon their arrival in Los Angeles. But that is immaterial, as COGSA places the initial burden on Cataria to prove that the cargo was lost while it was in OEC's custody. *See id.* at 70. "Had

[Cataria] weighed the container[s] while [they] still [were] sealed, and thereby demonstrated a shortfall in weight at outturn, [Cataria] would have had a better case against [OEC]. Having failed to do so, and also having failed to prove by other evidence that the cargo was lost while it was in [OEC's] custody, [Cataria] has not met its burden in this case." *Id.* at 70-71; *see also Phoenix Assurance Co. of N.Y. v. M/V Eagle Tide*, No. 96 Civ. 8404 (JGK), 1999 WL 163547, at *6-7 (S.D.N.Y. Mar. 24, 1999) (granting summary judgment where the carrier had issued "out tickets" showing that the weights of the containers at issue were the same as those listed on the bills of lading and the plaintiff failed to prove shortage at outturn).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. In light of that ruling, Defendant's motion to strike declarations submitted by Plaintiff in opposition to Defendant's summary judgment motion (Docket No. 31) is DENIED as moot. The Clerk of Court is directed to terminate Docket Nos. 20 and 31 and to close this case.

SO ORDERED.

Dated: February 18, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge